1  DAVID L. ANDERSEN (S.B. NO. 50010)
   ANDERSEN & ZIMMER
2  385 GRAND AVENUE, SUITE 300
   OAKLAND, CA 94610
3  (510)835-4952 FAX (510)835-4958

4  ATTORNEY FOR ANTWON GRAHAM

5              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
6              **SAN FRANCISCO DIVISION**

7  _____ )
   UNITED STATES,                      )
8                                      )      Action No.    CR 17-0050 JSW
                  Plaintiff(s),        )                    CR 13-0194 JSW
9                                      )
            v.                         )      **DEFENDANT, ANTWON**
10                                     )      **GRAHAM'S, SENTENCING**
   ANTWON GRAHAM.                      )      **MEMORANDUM, OBJECTIONS TO**
11                                     )      **PSR, AND REQUEST FOR**
                  Defendant(s).        )      **VARIANCE**
12                                     )
                                       )      Date:    October 3, 2017
13                                     )      Time:    1:00 p.m.
   _____ )      Court:   Hon. Jeffrey S White

14

15  **OBJECTIONS TO PSR:**

16        **Paragraph 38:**

17        Probation has added three points to Mr. Graham's criminal history for the offense of

18  evading a police officer, and for which Mr. Graham was allegedly arrested on February 19, 2016.

19  Mr. Graham is alleged to have received a sentence of 16 months custody for this offense the next

20  month. However, Mr. Graham was in custody on his prior federal sentence on February 19,

21  2016, and he has no memory of this offense. Apparently the probation officer has requested

22  records regarding this offense, but they have not been received. The California Department of

23  Corrections apparently has no records regarding this offense.

24        The undersigned has been attempting to obtain the Alameda County Superior Court file

25  for this offense, but has not yet received it. For the present, Mr. Graham objects to reliance on

26  this alleged conviction with no verification. Counsel will provide an update to the court with

27  what information he is able to obtain.

28        **Paragraph 37:**

ANDERSEN & ZIMMER
385 GRAND AVE. SUITE 300
OAKLAND, CA 94610
(510)835-4952

U.S. v. Antwon Graham
Sentencing Memorandum              - 1 -

This offense is Penal Code § 245(c) but is characterized as an "[a]ssault with a firearm" on a peace officer. However, no firearm was involved in this offense. The California Penal Code section 245(c) provides

> Any person who commits an assault with a deadly weapon or instrument, **other than a firearm,** or by any means likely to produce great bodily injury upon the person of a peace officer or firefighter, and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer or firefighter is engaged in the performance of his or her duties, shall be punished . . . . .

The alleged deadly instrument was a car.

**Credit for Time Served:**

The PSR reflects that Mr. Graham has been in federal custody for this offense since February 9, 2017. That is true. However, Mr. Graham has been in custody for this offense since December 7, 2016. That is the date on which he was arrested for the offense to which he entered his plea of guilty. He was held in state custody until federal charges were filed. Thereafter, the state charges were dismissed, and he was transferred. Accordingly, there are two months of custody time attributable to this offense for which there are no other charges pending nor another conviction. Mr. Graham should be given credit for this time. The most expeditious manner in which this can be accomplished would be to reduce the federal sentence which the court might otherwise impose by two months with credit to run from February 9, 2017.

**THE OFFENSE:**

By his plea and his admission of violation of supervised release, Mr. Graham has acknowledged gun possession on two occasions. As a convicted felon he was aware that he was prohibited from possessing these weapons. However, it is important to note that there is no allegation that he used a weapon for violence.

Mr. Graham has provided the court with a lengthy letter in which he tells the court he felt compelled to arm himself for his own and his family's protection. (Exhibit A.) He was raised in an area where there is a genuine threat to persons, even those who are not themselves engaged in violence. Mr. Graham has been a victim of this senseless violence in the past. When he was simply walking back home after basketball practice, he was shot in the leg. He still carries the scar from the bullet wound. Although the shot was to his leg, Mr. Graham believes that he

ANDERSEN & ZIMMER
385 GRAND AVE. SUITE 300
OAKLAND, CA 94610
(510)835-4952

U.S. v. Antwon Graham
Sentencing Memorandum
- 2 -

survived only because the shooter was a bad shot, and missed a more vital part of his body.

An experience like this has a lasting impact on a person's state of mind. The fear of once again be assaulted does not disappear easily. Further, in Mr. Graham's case there have been more recent incidences that reinforced that fear. In one case, a couple of months before his arrest on this case, Mr. Graham and his now wife, Sokha Brinston, were driving in a car. Another car passed them going in the opposite direction, but the people in the car gave them extremely hard looks. In his rear view mirror Mr. Graham saw that car make an immediate and abrupt U-turn to get behind Mr. Graham's car. Mr. Graham fled the scene by running red lights and got away, but believes that only his flight saved them.

On December 7, 2016, when he was arrested, Mr. Graham was at a barber shop to get a haircut. The reason for the haircut was to get ready to attend the memorial service of a friend who had been killed by the senseless neighborhood violence which Mr. Graham also feared. Filed concurrently as Exhibits B and C are two newspaper articles regarding the murder of Roderick Travon Godfrey, who Mr. Graham had known as Travon. Mr. Godfrey was not a gang member, and was opposed to violence of the community. He was apparently killed because he had spoken out against that violence. However, his murder, and that of the boy who was with him demonstrates that the fear of violence which Mr. Graham felt was real.

In Mr. Graham's case he believed that he was at particular risk for gang violence. The reason is that both he and his brother grew up in a neighborhood where gangs were present. Their friends were gang members, and they were seen in the presence of them. That is enough for you to be perceived as a gang associate. This was apparently particularly true of his brother, and even though he is not a gang member, Mr. Graham seen as interchangeable for revenge for perceived slights or insults by rival gangs.

Mr. Graham did explore other avenues to protect himself other than guns. He had hoped to move to Las Vegas where his mother had relocated. That would have taken him out of his current predicament. However, shortly after his mother moved to Las Vegas, she was put into custody on a very old warrant. Mr. Graham believes that the underlying charge was eventually dismissed, but she was in custody for a substantial period. In addition, Mr. Graham was under

ANDERSEN & ZIMMER
385 GRAND AVE. SUITE 300
OAKLAND, CA 94610
(510)835-4952

U.S. v. Antwon Graham
Sentencing Memorandum                - 3 -

both state and federal supervision, and getting supervision for both changed to Nevada appeared to be an insurmountable problem. However, Mr. Graham still wishes to move out of Oakland to get away from the threat that he believes is real.

**MR. GRAHAM'S BACKGROUND AND CHARACTER:**

Mr. Graham understands that court's disappointment that he has come back before this court for new offenses while still under supervision for his prior offense. However, Mr. Graham wants the court to realize that he did not simply thumb his nose at the court. He made genuine attempts to change his life. His prior offense was selling narcotics. There is no evidence that Mr. Graham went back to drug dealing. In his letter to the court he points out that he did not. While on supervised release he was required to test regularly. He never tested dirty.

Once he was released from federal custody, his wife was able to help him get a job doing in home care for an elderly gentleman. This was the first real job which Mr. Graham had held, and, as he notes in his letter to the court, it felt good. As he also notes, he now has people who are concerned about him and are also willing to give him support. This is a first in his life, and he recognizes its importance.

Mr. Graham feels that he must leave Oakland. It is his hope that while he is in custody, his wife, Sokha, will be able to relocate the family to a community that will be safer for him, and that he will be able to join them when he is released. There is simply no one left in Oakland for him, and only threats remain. His recognition of this problem, his desire to leave Oakland, and his willingness to cut the ties that bound him to his prior lifestyle, demonstrates a level of maturity that has come with his age, and his family responsibilities.

In choosing a sentence, the court must respect the "parsimony principle, a broad command that instructs courts to 'impose a sentence sufficient, but not greater than necessary, to comply with' the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States,* ___ U.S. ___, 197 L.Ed. 2d 490, 497 (2017). As this Court is most certainly aware, a sentence within a determined Guideline range is not presumptively reasonable. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Rather, the Guidelines typically suggest "a rough approximation of sentences that might achieve [18

ANDERSEN & ZIMMER
385 GRAND AVE. SUITE 300
OAKLAND, CA 94610
(510)835-4952

U.S. v. Antwon Graham
Sentencing Memorandum
- 4 -

1 U.S.C.] § 3553(a)'s objectives." *Id.* at 996. The Guidelines are therefore the starting point, but

2 only "one factor among the § 3553(a) factors that are to be taken into account in arriving at an

3 appropriate sentence." *Id.* at 991, *citing Kimbrough v. United States*, 552 U.S. 85, 101. The

4 "over-arching provision" of 18 U.S.C. § 3553(a) is to impose a sentence "sufficient, but not

5 greater than necessary" to meet the goals of sentencing established by Congress. *Id.*

6      "Matters such as age, education, mental or emotional condition, medical condition

7 (including drug or alcohol addiction), employment history, lack of guidance as a youth, family

8 ties, or military, civic, charitable or public service are not ordinarily considered under the

9 Guidelines. *See* United States Sentencing Commission, Guidelines Manual §§ 5H1.1–6, 11, and

10 12 (Nov.2006) (emphasis added). These are, however, matters that § 3553(a) authorizes the

11 sentencing judge to consider. See, e.g., 18 U.S.C. § 3553(a)(1). In this case, as the probation

12 officer has pointed out, the lack of guidance which he received as a youth was a critical factor.

13 Both of his parents were drug dependent. He was not shown a path forward and, as he

14 recognizes, he simply joined in the unlawful conduct that surrounded him.

15      However, he has shown a level of maturity that will allow him to break out of the

16 community that has dominated his outlook and his conduct.

17      Probation believes that a sentence of 80 months plus twelve months for his supervised

18 release violation is sufficient. However, Mr. Graham requests that the court sentence him to six

19 years imprisonment for the new offense, and twelve months consecutive for the supervised

20 release violation. This sentence, eighty four months, or seven years, is sufficient but not greater

21 than necessary to serve the sentencing goals of § 3553. A total sentence of seven years represents

22 a quarter of the time Mr. Graham has been alive. Such a sentence is a severe sentence. It will

23 deter. It will punish. It will protect the public. It will provide the time necessary to learn a trade.

24 **CONCLUSION:**

25      Mr. Graham should be sentenced to seventy two months on CR 17-0050 with a

26 consecutive twelve months on CR 13-0194, but have two months subtracted from that sentence

27 to allow credit for the two months he spent in state custody for these charges before being

28 transferred to federal custody.

DATED: September 26, 2017

**ANDERSEN & ZIMMER**
385 GRAND AVE. SUITE 300
OAKLAND, CA 94610
(510)835-4952

U.S. v. Antwon Graham
Sentencing Memorandum      - 5 -

1

2          Respectfully Submitted,
           Andersen & Zimmer

3          _____/s/_____
           David L. Andersen
4          Attorney for Antwon Graham

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANDERSEN & ZIMMER**
385 GRAND AVE. SUITE 300
OAKLAND, CA 94610
(510)835-4952

U.S. v. Antwon Graham
Sentencing Memorandum                    - 6 -